JUSTICE COTTER
dissenting.
¶40 I respectfully dissent from the Court’s resolution of the certified questions.
¶41 I agree that some sort of “bright line” must be drawn so as to alert claimants of the date upon which their statute of limitations begins to run on claims for bad faith against an insurer. I further agree that *312 workers’ compensation cases differ from conventional tort matters in that, in workers’ compensation cases, there can potentially be multiple judgments or settlements entered. In spite of that fact, or perhaps because of it, I would conclude, as O’Connor urges, that the bright line should be the point in the disposition of the overall compensation claim where liability and the extent and duration of disability have been resolved by judgment or settlement, and not before.
¶42 I do not agree with the Court’s conclusion that such a point of demarcation would be inconsistent with our holdings in Brewington and Poteat. In Brewington II, we were asked to resolve when the statute of limitations ran on two separate claims brought by Brewington against his insurer: the first arising out of the insurer’s wrongful reduction of benefits, which had accrued in 1987 when the WCC restored his total disability benefits following our resolution of Brewington I, and the second based on the ongoing refusal of the insurer to pay his court-ordered attorney fees. We noted that in Brewington I, decided twelve years earlier, there had been a determination that Brewington’s disability was permanent and total, and that Brewington was entitled to a twenty percent statutory penalty. We determined in Brewington II that the statute of limitations in the reduction of benefits matter had commenced to run in 1987 and that this claim was therefore barred. Brewington II, ¶ 29. However, we held that the claim for fees did not accrue until 1996, and that his claim as to that issue was timely. Brewington II, ¶¶ 30-31. ¶43 Clearly, the issues of liability and the nature and extent of disability were resolved by this Court in Brewington I. It therefore made perfect sense for us to conclude in Brewington II that the statute of limitations for Brewington’s bad faith claims arising out of the insurer’s handling of those issues began to run once the WCC restored his benefits following our Brewington I decision.
¶44 It is important to note that the Court was silent in Brewington II as to whether it considered resolution of all liability and disability claims in Brewington I dispositive with respect to the running of the statute of limitations, or whether it determined that resolution of one “dispute” was the triggering event. Thus, there is as much support in Brewington II for the dissent’s approach as there is for the majority’s. I therefore disagree with this Court’s characterization of our decision in Brewington II as one made on the basis of the resolution of one “dispute” or another by the WCC.
¶45 The argument for O’Connor’s position finds strong support in Poteat, however. In Poteat, we noted that, one year prior to the filing *313 of the bad faith litigation, there had been a full and final compromise settlement agreement entered between the parties, which encompassed everything except future medical benefits. We therefore concluded that the District Court had subject matter jurisdiction over those bad faith claims arising before the settlement, but that the claims as to the denial of future medical benefits were not yet ripe. We said at 277 Mont. 120-121:
Poteat’s underlying worker’s compensation claims for compensation and past medical benefits have been fully settled. Those counts of her suit which encompass unfair trade practices committed before settlement have their basis in a valid existing settlement agreement. Since an underlying settlement is in place as mandated by § 33-18-242(6)(b), MCA, Poteat may legitimately pursue a UTPA claim in the District Court regarding pre-settlement unfair trade practices. [Emphasis added.]
It is thus clear that in Poteat, we found the existence of the type of full and final settlement contemplated by § 33-18-242(6)(b), MCA, to be of pivotal importance in determining whether a bad faith challenge was timely. We did not, as the Court finds at ¶ 17, simply reach our decision on the basis that a specific “dispute” within the case had been resolved by settlement or judgment.
¶46 I make the foregoing arguments to demonstrate that neither Brewington II or Poteat provide a solid underpinning for the Coui’t’s resolution of the issues before us. If anything, a comprehensive review of these cases supports O’Connor’s argument rather than that of National Union and Alexsis. Choosing which interpretation is correct is, I believe, more than just an academic exercise.
¶47 The Court concludes at ¶ 25 that the concerns we voiced in Fode about the chaos which could result from piecemeal bad faith litigation, as well as the concerns over judicial economy, are “of limited relevance ....” I disagree. In my judgment, our decision completely ignores the practicalities of both workers’ compensation and bad faith litigation.
¶48 By virtue of our decision today, claimants will be required to file a cause of action covering any perceived act of bad faith that occurred prior to the entry of each interim judgment. Because bad faith over the life of a case-be it real or perceived-is generally a course of conduct rather than a set of discrete incidents, there will be an overlap of the bad faith that occurred before, during the course of, and following each interim judgment. Under our decision, the insurer’s course of conduct will have to be broken into artificial subsets for each successive bad *314 faith lawsuit. And in each case, the court will have to figure out what portion of the claims’ file of the insurer should be produced in discovery, the insurer arguing for protection of any reference in the file to unresolved issues, and the claimant arguing that the disclosure is incomplete and therefore inadequate to support the claim.
¶49 In Fode, we expressed the following concerns about premature bad faith litigation, borne, we said, from “experience in the field”:
The insurance company is put in a difficult position by having to defend a bad faith case before the underlying case has been determined. Discovery of the insurer’s file in a bad faith case raises difficult “work product” and “attorney-client” problems affecting the underlying case. The practice also allows for undue leverage to be exerted by forcing the insurer to face the prospect of two lawsuits with the additional costs incurred for defense.
Fode, 221 Mont. at 287. Obviously, it will not be only the insurer that will experience the practical problems our decision will generate. Both parties to a bad faith cause of action will face a potential multiplication of costs and lawsuits, and associated discovery problems. And the courts will be faced with the prospect of multiple claims arising out of one workers’ compensation case.
¶50 There is irony in the parties’ respective positions. The insurer has encouraged-and won-a decision calling for early and serial bad faith litigation, while the claimant has urged a delayed resolution of such claims until the core issues of the case-liability and extent and duration of disability-have been resolved by settlement or judgment. For there to be a “bright line” visible to all, it is important that we choose one course or the other. I would conclude that precedent, reason, and practicality dictate the latter resolution. I therefore dissent from our Opinion.
JUSTICE LEAPHART joins in the dissent of JUSTICE COTTER.
JUSTICE REGNIER joins in the dissent of JUSTICE COTTER.